## City of Easton v. Steele

*Bernard M. Goodman*, Assistant City Solicitor, for plaintiff.

*Harry A. Dower* and *David F. Dunn*, of *Dower, Mackson, Hauff & Hettinger*, for defendants.

GRIFO, J., April 26, 1971.—The above defendants were convicted September 21, 1970, before William Ihrie, Alderman, City of Easton, Northampton County, Pa., of a summary offense for violation of the curfew contained in a proclamation of emergency dated September 20, 1970, issued by Hon. Fred L. Ashton, Mayor, City of Easton.

The proclamation of the mayor was issued pursuant to section 1203, The Third Class City Code, as amended December 16, 1969, P. L. 163, 53 PS

§36203. The charge before the alderman alleged that defendants were apprehended on Lehigh Drive in Easton, Pa., at 9:15 p.m., Sunday, September 20, 1970. Following conviction, each of the defendants perfected an appeal pursuant to the Minor Judiciary Court Appeals Act of December 2, 1968, P. L. 1137 (No. 355), sec. 3, 53 PS §3003.

By stipulation of counsel, all cases were heard on appeal by the court simultaneously at a hearing on Monday, April 19, 1971, at 1:30 p.m. The Hon. Fred L. Ashton, Mayor of Easton, Officer Carlos Medellin and Officer Joseph J. Mauro testified for the prosecution. Defendants Mastronarde, Rose, Gentile, Steele and DeLong, and Joseph Tyree, a bystander, testified for the defense.

## I. SUMMARY OF EVIDENCE

Mayor Ashton testified that the activities of boisterous crowds, including the breaking of some windows in the downtown business district overnight, Saturday, September 19 and Sunday, September 20, 1970, prompted him to consult with public safety officials and city council members of the City of Easton. Pursuant to this consultation, and based upon the evidence of civil disorder at hand, and the mayor's own opinion of the danger of civil disorder to the entire city, Mayor Ashton issued a proclamation of emergency on Sunday, September 20, 1970, proclaiming, among other things, that a curfew should be in effect from 9 p.m. until 5 a.m. overnight during each day of the period of emergency. The curfew forbade any person to be on the public streets, or in the public parks, or in any other public place in the City of Easton during the period of curfew. Upon cross-examination, the mayor indicated that he had no specific evidence of any acts of violence or civil disorder West of Seventh

Street, or South of Lehigh Street or North of Bushkill Street. However, he reiterated that, in his opinion, there was a danger to life and property throughout the City of Easton, and he issued his proclamation according to that opinion.

Officer Carlos Medellin, the arresting officer in each of the eight cases, testified that he arrived on duty at Center Square in Easton at approximately 8:30 p.m. Pursuant to instructions issued by his superiors on the police force, he and his partner, Officer Joseph Peake, cruised the downtown area in their marked police car no. 6 to insure compliance with the curfew by all persons. Officer Medellin testified that at approximately 9:12 p.m. he observed a Volkswagen bus, and a group of young persons running towards the bus. These young persons, according to him, got in the bus at the intersection of Fourth and Lehigh Streets. The bus proceeded south on Fourth Street, past the old New Jersey Central Railroad Passenger Station, thence westward on Lehigh Drive, where Officer Medellin pulled the bus over to the side of the road. He further testified that he interviewed the operator of the bus, defendant Mastronarde, and upon request was furnished with Mastronarde's Connecticut operator's license and the owner's registration card for the vehicle. Officer Medellin testified that it was 9:15 p.m. when he pulled the Volkswagen bus to the side of the road on Lehigh Drive. During his conversation with defendant Mastronarde, Officer Medellin was advised by Mastronarde that the group in the bus were reporters for an underground newspaper. Medellin disbelieved this statement when none of the group was able to produce a "press card." Officer Medellin testified that defendant DeLong was placed in police cruiser no. 6. Another police cruiser arrived at the scene, after which the defendants drove in their bus

preceded and followed by a police car to police headquarters.

Officer Mauro testified that 15 arrests were made for curfew violations on September 20, 1970, including the eight defendants in this case, another adult who was also in the Volkswagen bus involved in these cases, three juveniles who also were in the Volkswagen bus, and three other adults in incidents unrelated to the present cases.

Defendant Mastronarde testified that a group of staff members of the "Open Valley," an underground newspaper, heard in Allentown of the disturbances in Easton and determined to go to Easton to see the events first-hand, to cover them for their publication. Most of the defendants in this case, and some others, went to Easton in the Volkswagen bus registered in the name of the father of defendant Rose. Having arrived in Easton at about 7 p.m., the Open Valley group circulated in the crowd at Center Square until approximately 8:30 p.m. At that time, the group divided, with defendants Mastronarde and Albers going to get the Volkswagen bus and defendant Rose and the others awaiting the bus in Center Square. In the interval following Mastronarde's departure for the bus, the police in the Center Square area disbursed the crowds. Mastronarde cruised the downtown area in search of his Open Valley group, picking up one Vernon Williams at 8:40 p.m., defendant DeLong and an unnamed female juvenile at 8:45 or 8:50 p.m., and the remainder of the Open Valley group at 8:55 p.m. on Fourth Street where it intersects Washington Street. Mastronarde recalled the time of picking up the main group of Open Valley people because he said he was anxious to get the entire group off the streets before the curfew, and glanced at his watch which read 8:55 p.m. Mastronarde testified that the bus proceeded south

on Fourth Street, past the old New Jersey Central Passenger Station and turned west onto Lehigh Drive. Shortly after making the turn west onto Lehigh Drive, Mastronarde testified that someone in the bus advised him to pull over, that a police car was stopping them. He did so, checking his watch again which read 8:58 p.m. Mastronarde testified to his recollection of the conversation with Officer Medellin, and added that all members of the Open Valley group were ordered out of the bus at the scene.

Defendant Rose corroborated the testimony of defendant Mastronarde as to the sequence of events and times at which they occurred. Mr. Rose further substantiated that "Open Valley" was indeed a publication of the so-called "underground" variety, and through his testimony five of the six editions of "Open Valley," included an edition containing a report on the Easton disorders of September 19, 1970, prepared from the notes and other investigations made by the "Open Valley" group who were in Easton on September 20, 1970. The newspapers were accepted in evidence only to show the existence of "Open Valley" as a publication, and not for the truth of any facts reported or the correctness of any opinions stated in any of the issues. Defendants Gentile and Steele further corroborated the sequence of events and the times of their occurrence as given by Mr. Mastronarde. Miss Gentile and Miss Steele also testified that they were engaged in making written notes for use in preparing coverage of the events in Easton for "Open Valley." Miss Gentile also testified to details of the conduct of Officer Peake at the scene of the arrest on Lehigh Drive, and as to the time on the clock in Police Headquarters some time after they had been arrested. Miss Gentile testified that the clock read 9:12 p.m. The testimony of Miss DeLong corroborated that she

was picked up by the bus, that Mr. Williams was in the bus, along with defendants Mastronarde and Albers, and that the rest of the "Open Valley" group got into the bus shortly thereafter.

Mr. Tyree testified that he observed Officer Medellin at Center Square in Easton at 8:15 p.m. according to a clock in front of Orr's Department Store.

## II. QUESTIONS PRESENTED

The issues presented for disposition by this court are:

(a) Whether the statute under which the mayor acted violates the United States or Pennsylvania Constitution;

(b) Whether, assuming the statute to be constitutional, the action of Mayor Ashton, based upon the information and advice given him, and upon his own opinion, was within the discretion granted to him by the statute;

(c) Whether defendants violated the curfew (raising a question of credibility between Officer Medellin and the defendants), or whether they were indeed complying with it and the orders of the police on the scene by being en route out of the city.

## III. DISCUSSION

The first three questions presented above are difficult. Each question probes deeply fundamental issues of our system of ordered liberties and the constant need to maintain a balance between individual rights and public order. Also involved are questions relating to the basic role of the judiciary in reviewing the action of the executive department of local government.

Since the cases are disposed of on other grounds, it is unnecessary to decide whether Act of December 16, 1969, P. L. 372, 53 PS §36203, is constitutional.

Suffice it to say, however, that a statute which allows the temporary imposition of a curfew, limited in time and reasonably made necessary by disruptive crowds, is a proper exercise of the police power of public authority. In any event, a duly enacted statute of the Pennsylvania General Assembly is presumed to be constitutional, and no grounds have been raised in this case to satisfy the court that such presumption does not here prevail.

The statute in question permits the mayor of a third class city to proclaim a state of emergency (part of which may include a curfew) as to all or part of the city in which he finds a clear and present danger to life or property. Even though Mayor Ashton stated on cross-examination that he had no information as to specific incidents of violence or disorder beyond what is generally considered the downtown business district of Easton, it is the opinion of this court that he acted reasonably and legitimately when he issued the proclamation. Mayor Ashton's information and advice caused him to extend the state of emergency to the entire City of Easton. Easton, unlike the major metropolitan areas of the Commonwealth, or even its somewhat larger neighboring cities of Allentown and Bethlehem, does not have a large land area. Disorder by persons determined to harm people and property could very easily spread in a matter of moments to all sections of the city. Clearly, the action of Mayor Fred L. Ashton proclaiming the state of emergency on September 20, 1970, was not only within the limits of the discretion vested in him by section 1203 of The Third Class City Code, but also required of him. He acted reasonably and legitimately.

In appeals from summary convictions, the credibility of the witnesses is most often the point upon which the outcome of the appeals hinges. These cases are no different. On an appeal from a summary conviction, the

court hears the matter de novo and must be convinced of the guilt of the defendant as charged beyond a reasonable doubt. Police officers, through their experience in law enforcement, are more adept than private citizens in the art of observation and recollection. The testimony which conflicts with the account of an incident given by a police officer is evaluated in light of the probable keener sense of observation of the police officer.

In this case, the only real conflict of testimony between the arresting officer and each of the defendants is the difference in time. Officer Medellin testified that he stopped the Volkswagen bus containing defendants at 9:15 p.m. Defendant Mastronarde testified that he was stopped at 8:58 p.m. Officer Medellin testified that he arrived at Center Square, Easton, at 8:30 p.m. Mr. Tyree testified that he saw Officer Medellin there at 8:15 p.m. The range of difference in the accounts as to when various events occurred is not so large as to require this court seriously to question the credibility of any of the witnesses. In fact, the court was impressed with the sincerity of all of the witnesses who testified as to the time at which the events in these cases occurred.

Undisputed is the fact that defendants were on Lehigh Drive, moving westwardly away from the center of the disturbance, in compliance with directions given to persons in the downtown area by the police. They were on their way out of the city when stopped.

Each of the defendants who testified asserted that the "Open Valley" group was attempting to get off the streets of Easton before the curfew started. The testimony of Officer Medellin is that they were out of the center of the city and going in a direction in which the police were moving all persons.

The court is not convinced beyond a reasonable

doubt that the defendants were knowingly and intentionally violating the curfew.

Accordingly, the court enters the following

## ORDER OF COURT

And now, to wit, April 26, 1971, upon hearing de novo of the testimony in the above appeals and review of the applicable law, the court finds each of the defendants not guilty, and orders a refund of the appeal costs.